## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| **In Re: 20-40078-EDK** | ) | **Chapter 13 Proceeding** |
| | ) | |
| **Brian C Forit** | ) | |
| **Debtor** | ) | |
| | ) | |
| **Santander Bank, N.A.** | ) | |
| **Movant** | ) | |
| | ) | |
| **vs.** | ) | |
| | ) | |
| **Brian C Forit** | ) | |
| **and David A. Mawhinney, Trustee** | ) | |
| **Respondent** | ) | **February 2, 2023** |

### <u>MOTION FOR RELIEF FROM THE AUTOMATIC STAY</u>

Santander Bank, N.A. (the "Movant") hereby moves this Court, pursuant to 11

U.S.C. § 362, for relief from the automatic stay with respect to certain real property of

**Brian C Forit** (the "Debtor") having an address of 23 Little Tree Lane, Bellingham,

Massachusetts 02019 (the "Property"). In support of this Motion, Movant respectfully

states:

1. A petition under Chapter 13 of the United States Bankruptcy Code was filed

with respect to the Debtor on January 17, 2020.

2. A Chapter 13 Plan was confirmed on 8/17/2021.

3. The Debtor has executed and delivered or is otherwise obligated with

respect to that certain promissory note in the original principal amount of $264,000.00 (the

"Note"). A copy of the Note is attached hereto as Exhibit A. Movant is an entity entitled to

enforce the Note and Mortgage (defined below).

4.  Pursuant to that certain Mortgage (the "Mortgage") to Mortgage Electronic

Registration Systems, Inc. as nominee for Sovereign Bank, all obligations (collectively, the

"Obligations") of the Debtor under and with respect to the Note and the Mortgage are secured

by the Property.  A copy of the Mortgage is attached hereto as Exhibit B.

5.  The Mortgage has been assigned to the Movant pursuant to an assignment of

mortgage, from Mortgage Electronic Registration Systems, Inc. to Santander Bank, N.A.,

formerly known as Sovereign Bank, a copy (copies) of which is (are) attached hereto

(collectively) as Exhibit C.

6.  Said note and mortgage are subject to a loan modification agreement modified with

an effective date of 01/01/2016. See a copy of the loan modification agreement(s) attached

hereto as Exhibit D.

7.  As of February 21, 2023, the approximate outstanding amount of the obligations due

under said note and mortgage less any partial payments or suspense balance is $256,469.70.

8.  As of February 8, 2023, the Debtor has failed to make post-petition payments in an

aggregate amount sufficient to satisfy in full the post-petition payment contractually due under

the Note on November 1, 2022 or any full payment contractually due under the Note thereafter

for a total post-petition payment arrearage of $7,716.24, broken down as follows: 4 payments

each in the amount of $1,935.75, less suspense balance of $26.76.  See Official Form 13 which

is attached hereto and integrated as if set forth in full.  The total pre-petition arrearage owed to

the Movant was $34,009.83

9.  The estimated market value of the Property is $350,000.00.  The basis for such

valuation is Debtor's Schedule D.  For purposes of this motion, it is the Movant's opinion that

the liquidation value of the premises is $326,904.00, calculated as the fair market value less a

reasonable Realtor's fee of 6%, $21,000.00, deed stamps of $1,596.00, and anticipated costs incurred for a real estate closing of $500.00.

10. Upon information and belief, the encumbrances on the Property listed in the Debtor's Schedules or otherwise known, including but not limited to the encumbrances granted to Movant, listed in order of priority, are: (i) Movant $256,469.70, (ii) Santander Bank, N.A. $25,660.00.

11. February 21, 2023, the estimated total amount of encumbrances on the Property is $282,129.70.

12. There is no other collateral securing Debtor's obligation to the Movant.

13. Upon information and belief a Declaration of Homestead has not been recorded.

14. Pursuant to 11 U.S.C. § 362(d)(1), cause exists for relief from the automatic stay for the following reasons:

    a. Movant's interest in the Property is not adequately protected. Post-petition payments have not been made.

15. The Movant also requests that this Court order that Bankruptcy Rule 4001(a)(3) is not applicable so that Movant may immediately enforce and implement the requested order modifying the automatic stay.

16. Further, to the extent that there exists a co-debtor stay pursuant to 11 U.S.C. § 1301(a) as to Tracy Zacharie, hereinafter, "co-debtor" the Movant requests that said co-debtor stay be modified to allow Movant to foreclose its mortgage on the Property because;

    (a) upon information and belief, the co-debtor received the consideration for the claim held by the Creditor as the co-debtor is an owner of the Property];

(b) the Movant's interest would be irreparably harmed by continuation of the co-debtor stay.

17.  The Movant also reserves all rights to seek an award or allowance of reasonable attorney's fees and costs in connection with the preparation, filing, and prosecution of this Motion for Relief from Stay.  The note and mortgage previously referred to in this Motion contain provisions allowing the Movant to collect reasonable attorney's fees and costs in connection with enforcing the note and mortgage.  In the event the Debtor receives a discharge, such fees and costs shall be non-recourse against the Debtor unless included in a reaffirmation agreement.

WHEREFORE, Movant prays that this Court issue an Order terminating or modifying the stay and co-debtor stay and granting the following:

1.  Relief from the stay and co-debtor stay allowing Movant and any successors or assigns to proceed under applicable non-bankruptcy law to enforce its remedies to foreclose upon and obtain possession of the Property.

2.  That the 14-day stay of by Bankruptcy Rule 4001(a)(3) be waived.

3.  For such other relief as the Court deems proper.

Santander Bank, N.A.

By /s Richard T. Mulligan
Richard T. Mulligan
B.B.O. #567602
The Movant's Attorney
Bendett & McHugh, P.C.
270 Farmington Avenue, Suite 171
Farmington, CT 06032

Phone (860) 677-2868
Fax (860) 409-0626
Email: BKECF@bmpc-law.com

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In Re: 20-40078-EDK | ) Chapter 13 Proceeding |
| | ) |
| | ) |
| **Brian C Forit** | ) |
|       **Debtor** | ) |
| | ) |
| **Santander Bank, N.A.** | ) |
|       **Movant** | ) |
| | ) |
| **vs.** | ) |
| | ) |
| **Brian C Forit** | ) |
| **and David A. Mawhinney, Trustee** | ) |
|       **Respondent** | ) |

## ORDER GRANTING MOTION FOR RELIEF FROM THE AUTOMATIC STAY

After notice and a hearing on Santander Bank, N.A. (hereafter, the "Movant") Motion for Relief from the Automatic Stay, (hereafter, the "Motion") Doc. I.D. No. _____:

**IT IS HEREBY ORDERED** that the Motion is Granted—the automatic stay of 11 U.S.C. § 362(a)and the co-debtor stay of 11 U.S.C. § 1301(a) are modified to permit the Movant, its designated servicing agent, and/or its successors and assigns to commence, continue, and prosecute to judgment a foreclosure action and otherwise exercise its rights, if any, with respect to real property known as 27 Little Tree Lane, **Bellingham , Massachusetts 02019** in accordance with applicable state law, and

**IT IS FURTHER ORDERED** that the Movant, its designated servicing agent, and/or its successors and assigns may, at its option, offer, provide, and enter into a potential forbearance agreement, loan modification, refinance agreement or other loan workout/loss mitigation agreement, including accepting a deed in lieu of foreclosure from the Debtor. The Movant or its designated servicing agent may contact the Debtor via telephone or written correspondence to offer such an agreement. In the event the Debtor received a Chapter 7 discharge after Movant's loan was originated, any such agreement shall be non-recourse against the Debtor unless Movant's debt was included in a reaffirmation agreement.

**IT IS FURTHER ORDERED** that the Movant may assess the Debtor's mortgage account with reasonable attorney's fees and costs in connection with this Motion. In the event the Debtor receives a discharge, such fees and costs shall be non-recourse against the Debtor unless included in a reaffirmation agreement.

**IT IS FURTHER ORDERED** that the 14-day stay of Fed.R.Bankr.P. 4001(a)(3) is not applicable and the Movant may immediately enforce and implement this order.

Dated: _____                BY THE COURT


_____

Honorable Elizabeth D. Katz
U.S. Bankruptcy Judge

## UNITED STATES BANKRUPTCY COURT
### DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **In Re: 20-40078-EDK** | ) **Chapter 13 Proceeding** |
| | ) |
| **Brian C Forit** | ) |
|     **Debtor** | ) |
| | ) |
| **Santander Bank, N.A.** | ) |
|     **Movant** | ) |
| | ) |
| **vs.** | ) |
| | ) |
| **Brian C Forit** | ) |
| **and David A. Mawhinney, Trustee** | ) |
|     **Respondent** | ) **February 8, 2023** |

### PROOF OF SERVICE

The undersigned (the "Movant") hereby certifies that, on or before the ⟦13⟧ day of February, 2023, a copy of the Motion for Relief From Stay and a copy of the proposed order were served to the following:

Brian C Forit
Debtor
23 Little Tree Lane
Bellingham, MA 02019
*Via First Class Mail*

David A. Mawhinney
Trustee
*Via Electronic Notice of Filing*

Tax Collector
Town of Bellingham
10 Mechanic Street
Bellingham, MA 02019
*Via First Class Mail*

**Kenneth P. Doherty**
**Debtor's Attorney**
*Via Electronic Notice of Filing*

**U.S. Trustee**
*Via Electronic Notice of Filing*

Tracy Zacharie
23 Little Tree Lane
Bellingham, MA 02019
*Via First Class Mail*

I further certify that I am, and was at all times during the service of a copy of this Motion For Relief From Automatic Stay, not less than 18 years of age and not a party to the  matter concerning which service was made.

**I declare that the foregoing is true and correct under penalty of perjury.**

By /s/ Richard T. Mulligan

Richard T. Mulligan
B.B.O. #567602
The Movant's Attorney
Bendett & McHugh, P.C.
270 Farmington Avenue, Suite 171
Farmington, CT 06032
Phone (860) 677-2868
Fax (860) 409-0626
Email: BKECF@bmpc-law.com

**OFFICIAL LOCAL FORM 13**

**UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS**

In re    **Brian C Forit**                              **Case No.  20-40078-EDK**
         **Chapter   13**
            **Debtor**

**MOTION FOR RELIEF FROM STAY - REAL ESTATE WORKSHEET**
(To be attached to Motion for Relief from Stay)

I   Anna Roman, Authorized Signer   of  Santander Bank, N.A.
(Name and Title)                    (Name of Organization/Corporation/Moving Party)

(hereinafter, "Movant") hereby declare (or certify, verify, or state):

**BACKGROUND INFORMATION**

1.   (a) Date chapter 13 petition was filed (If case has been converted from Chapter 7 to

Chapter 13, provide date of petition and date of conversion): 1/17/2020

(b) Address of real property which is the subject of this motion: 23 Little Tree Lane,

Bellingham, Massachusetts 02019.

2.   (a) Original Mortgagee's Name and Address: Sovereign Bank, 1130 Berkshire Blvd.,

Wyomissing, PA 19610 .

(b) Name and Address of Current Mortgage Holder: Santander Bank, N.A., 1

Corporate Drive, Suite 360, Lake Zurich, IL 60047

(c) Name of Note Holder, if different than Mortgage Holder: N/A

3.   Date of Mortgage: March 3, 2011.

4.   Post-Petition payment address, if different than above: N/A

5.   The manner in which the Movant perfected its interest in the property: **Recorded**

**Mortgage.**

6.  Other collateral securing the note: <u>N/A</u>

7.  Other liens and encumbrances affecting the property in the order of their priority:

| Names of Senior Lien holder | Amount Due | Source of Information (e.g., Debtor's schedules, public records) |
|---|---|---|
| | | |
| | | |
| Movant's lien | $256,469.70 | Movant's Records |
| Names of Junior Lien holders | Amount Due | Source of Information |
| Santander Bank N.A. | $25,660.00 | Debtor's Schedule D |
| | | |

8.  Existence and Date of Recorded Homestead (if known): <u>Unknown</u>

## DEBT/VALUE REPRESENTATIONS

9.  Total pre-petition and post-petition indebtedness of Debtor(s) to Movant at the time of filing the motion: $ 256,469.70 as of 02/21/23.

(Note: this amount may not be relied on as a "payoff" quotation.)

10. (a) Movant's estimated fair market value of the real property: $ <u>350,00.00</u>

(b)    Source of estimated fair market valuation: <u>Debtor's Schedule D</u>

(c)    Liquidation value of the real property: <u>$326,904.00</u>

**STATUS OF DEBT AS OF THE PETITION DATE**

11.    (a)    Total pre-petition indebtedness of Debtor(s) to Movant as of petition filing date: $271,934.86.

(b)    Amount of principal: $ 243,596.44.

(c)    Amount of interest: $ 15,082.96.

(d)    Amount of escrow (taxes and insurance): $ 7,964.05.

(e)    Amount of forced placed insurance expended by Movant: $0.00.

(f)    Amount of Attorney's fees billed to Debtor(s) pre-petition: See POC Claim #7 filed on 03/24/20.

(g)    Amount of pre-petition late fees, if any, billed to Debtor(s): See POC Claim #7 filed on 03/24/20.

12.    Contractual interest rate: 4.000%(If interest rate is (or was) adjustable, please list the rate(s) and dates(s) the rate(s) was/were in effect on a separate sheet and attach the sheet as an exhibit to this form; please list the exhibit number here: ___.)

13.    Explain any additional pre-petition fees, charges or amounts charged to the account of the Debtor(s) and not listed above: See POC Claim #7 filed on 03/24/20.

(If additional space is needed, list the amounts on a separate sheet and attach the sheet as an exhibit to this form; list the exhibit number here: ___).

**AMOUNT OF ALLEGED POST-PETITION DEFAULT**
**(AS OF 02/21/2023)**

14.    Date last payment was received: 10/03/2022.

15.    Total number of post-petition payments due from the date of the filing of petition
through (02/01/2023): 38.

**SCHEDULE OF POST-PETITION PAYMENTS IN DEFAULT**

| Paym't Due Date | Amt. of Paym't Due | Amt. of Paym't Rec'd | Date Paym't Rec'd | Amt. Applied to Principal | Amt. Applied to Interest | Amt. Applied to Escrow | Late Fee Charged if any | Amt. Not Applied |
|---|---|---|---|---|---|---|---|---|
| 11/1/22 | $1,935.75 | | | | | | | |
| 12/1/22 | $1,935.75 | | | | | | | |
| 1/1/23 | $1,935.75 | | | | | | | |
| 2/1/23 | $1,935.75 | | | | | | | |
| | | | | | | | | |
| Totals | $ 7,743.00 | $ | | $ | $ | $ | | $ |

16.    Amount of Movant's Attorneys' fees charged to Debtor to date for the preparation
and filing of this Motion: $1,238.00

17.    Other Attorneys' fees charged to Debtor post-petition: $ 0.00.

18.    Amount of Movant's post-petition inspection fees: $ 0.00.

19.   Amount of Movant's post-petition appraisal/broker's price opinion: $ 0.00.

20.   Amount of forced placed insurance or insurance provided by the Movant post-petition:
$0.00.

21.   Sum held in suspense by Movant in connection with this contract, if applicable:
$ 26.76.

22.   Amount of other post-petition advances or charges (e.g. real estate taxes, insurance):
$ 0.00.

23.   Total amount of postpetition default, including all payments, fees, and charges:
$8,954.24.

24.   Amount and date of post-petition payments offered by the Debtor(s) and refused by the Movant: Amount(s) $_____;

Date(s): _____.

## REQUIRED ATTACHMENTS TO MOTION

Attach the following documents to this motion and indicate the exhibit number associated with the documents:

(1)   Copies of documents that indicate Movant's interest in the subject property. For purposes of example only, a complete and legible copy of the promissory note or other debt instrument together with a complete and legible copy of the mortgage and any assignments in the chain from the original mortgagee to the current moving party. (Exhibits A-D.)

(2)   Copies of documents establishing proof of standing to bring this motion if different from the above. (Exhibits_____.)

(3)   Copies of documents establishing that Movant's interest in the real property is perfected. For the purposes of example only, a complete and legible copy of the Financing Statement (UCC-1) filed with either the Clerk's Office or the Register of the county the property is located in. (Exhibits _____.)

**CERTIFICATION AND DECLARATION FOR BUSINESS RECORDS**

The undersigned certifies that the information provided in this worksheet and any exhibits attached to this worksheet (other than transactional documents attached as required in paragraphs (1) through (3) above) are derived from records that (a) were made at or near the time of the occurrence of the matters set forth by, or from information transmitted by a person with knowledge of those matters; and (b) were prepared and kept in the regular course of business.

In the event the Worksheet is not fully completed, Movant shall explain the reasons therefor and the reasonable efforts made to obtain the information. _____

_____

The undersigned further certifies that copies of any transactional documents attached to this worksheet as required by paragraphs 1, 2, or 3, immediately above, are true and accurate copies of the original documents. The undersigned further certifies that the original documents are in Movant's possession, except as follows: _____.

I/WE DECLARE UNDER THE PENALTY OF PERJURY THAT THE FOREGOING REPRESENTATIONS OF FACT ARE TRUE AND CORRECT TO THE BEST OF MY/OUR KNOWLEDGE AND BELIEF.

_____          _____
Signature                                                            Date
                                                                           February 10, 2023

Anna Roman_____
Printed Name

Authorized Signer, Santander Bank, N.A._____
Title and Organization

## OFFICIAL LOCAL FORM 7

### UNITED STATES BANKRUPTCY COURT
### DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| In re: | Brian C Forit | Case No:   20-40078-EDK |
| | Brian C Forit | |
| | Debtor | Chapter:   13 |

### DECLARATION RE: ELECTRONIC FILING

**PART I - DECLARATION**

I ___Anna Roman, Authorized Signer___ of ___Santander Bank, N.A.___ ,hereby declare(s) under penalty of perjury that all of the information contained in my **MOTION FOR RELIEF FROM STAY - REAL ESTATE WORKSHEET** ("Document"), filed electronically, is true and correct. I understand that this DECLARATION is to be filed with the Clerk of Court electronically concurrently with the electronic filing of the Document. I understand that failure to file this DECLARATION may cause the Document to be struck and any request contained or relying thereon to be denied, without further notice.

I further understand that, pursuant to the Massachusetts Electronic Filing Local Rule (MEFR) 7(b), all paper documents containing original signatures executed under the penalties of perjury and filed electronically with the Court are the property of the bankruptcy estate and shall be maintained by the authorized CM/ECF Registered User for a period of five (5) years after the closing of this case.

Dated: _February 10, 2023_   (Affiant) _____
Anna Roman, Authorized Signer

**PART II - DECLARATION OF ATTORNEY (IF AFFIANT IS REPRESENTED BY COUNSEL)**

I certify that the affiant(s) signed this form before I submitted the Document, I gave the affiant(s) a copy of the Document and this DECLARATION and I have followed all other electronic filing requirements currently established by local rule and standing order. This DECLARATION is based on all information of which I have knowledge and my signature below constitutes my certification of the foregoing under Fed. R. Bankr. P. 9011. I have reviewed and will comply with the provisions of MEFR 7.

Dated: 2/13/2023 _____

Signed: /s/Richard T. Mulligan _____
(Attorney for Affiant - /s/used by Registered ECF Users Only)

**EXHIBIT A**



████ = redacted information

# NOTE

ORIGINAL IN
SECONDARY

March 03, 2011                    Bellingham,                    MASSACHUSETTS
[Date]                              [City]                          [State]

23 Little Tree Lane
Bellingham, MA  02019
[Property Address]

## 1.  BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 264,000.00            (this amount is called "Principal"),
plus interest, to the order of the Lender. The Lender is  Sovereign Bank

I will make all payments under this Note in the form of cash, check or money order.
I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled
to receive payments under this Note is called the "Note Holder."

## 2.  INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate
of           5.250 %.
The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of
this Note.

## 3.  PAYMENTS

(A) Time and Place of Payments
I will pay principal and interest by making a payment every month.
I will make my monthly payment on the 1st       day of each month beginning on May 01, 2011          I will
make these payments every month until I have paid all of the principal and interest and any other charges described below that I
may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before
Principal. If, on April 01, 2041        , I still owe amounts under this Note, I will pay those amounts in full on that date,
which is called the "Maturity Date."
I will make my monthly payments at 1130 Berkshire Blvd., Wyomissing, PA  19610
or at a different place if required by the Note Holder.

(B) Amount of Monthly Payments
My monthly payment will be in the amount of U.S. $ 1,457.82

## 4.  BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a
"Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment
as a Prepayment if I have not made all the monthly payments due under the Note.
I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my
Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to
the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the
Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the
Note Holder agrees in writing to those changes.

MULTISTATE FIXED RATE NOTE - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
VMP ®
Wolters Kluwer Financial Services



Form 3200 1/01
VMP5N (1905).01
Page 1 of 3

 

**5. LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**6. BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A) Late Charge for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of **Fifteen**    calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be    **3.000 %** of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**7. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**8. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**9. WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

MULTISTATE FIXED RATE NOTE - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
VMP ®
Wolters Kluwer Financial Services
Form 3200 1/01
VMP5R (0907)
Page 2 of 3

 

10.  UNIFORM SECURED NOTE
    This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:
    If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.
    If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)          _____ (Seal)
Brion Forit                    -Borrower          Tracy Zacharie                  -Borrower

_____ (Seal)          _____ (Seal)
                               -Borrower                                          -Borrower
Laurie Sullivan  witness

                                                          (Sign Original Only)

[ ]  Refer to the attached *Signature Addendum* for additional parties and signatures.

MULTISTATE FIXED RATE NOTE - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
VMP ®                                                                    Form 3200 1/01
Wolters Kluwer Financial Services                                        VMPSN (1107)
                                                                         Page 3 of 3



**EXHIBIT B**

Return To:

~~Sovereign Bank, MES-10-421-CR2~~
~~450 Penn Street~~
~~Reading, PA 19602~~

Doc#1,222,017 03-08-2011  2:09
Norfolk County Land Court

Prepared By:

Cindy L. Stillings
One Sovereign Way
RI1-SPV-0214
East Providence, RI  02915

*Return To:*
Residential Title & Escrow Services, P.C.
114 Turnpike Road
Westboro, MA 01581

▓▓▓ = Redacted Information

-------- [Space Above This Line For Recording Data] --------

# MORTGAGE

MIN ▓▓▓▓▓▓▓▓▓▓▓

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in
Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are
also provided in Section 18.

(A) "Security Instrument" means this document, which is dated March 03, 2011
together with all Riders to this document.
(B) "Borrower" is Brian Forit and Tracy Zacharie

Borrower is the mortgagor under this Security Instrument.
(C) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is
acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the mortgagee
under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an
address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
(D) "Lender" is Sovereign Bank

Lender is a Federal Savings Bank
organized and existing under the laws of The United States of America
Lender's address is 1130 Berkshire Blvd., Wyomissing, PA  19610

(D-1) "Mortgage Broker" is

MASSACHUSETTS - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS          Form 3022 1/01
VMP ®                                                                                          VMP6A(MA) (0806)
Wolters Kluwer Financial Services                                                             Page 1 of 16



Mortgage Broker's post office address is

and Mortgage Broker's license number is
(D-2) "Mortgage Loan Originator" is
Mortgage Loan Originator's post office address is

and Mortgage Loan Originator's license number is
(E) "Note" means the promissory note signed by Borrower and dated March 03, 2011
The Note states that Borrower owes Lender Two Hundred Sixty Four Thousand And
Zero/100                                                                              Dollars
(U.S. $264,000.00           ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than April 01, 2041
(F) "Property" means the property that is described below under the heading "Transfer of Rights in the
Property."
(G) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.
(H) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider     ☐ Condominium Rider          ☐ Second Home Rider
☐ Balloon Rider             ☐ Planned Unit Development Rider   ☐ 1-4 Family Rider
☐ VA Rider                  ☐ Biweekly Payment Rider     ☐ Other(s) [specify]

(I) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.
(J) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization.
(K) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by
check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic
instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit
or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller
machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
(L) "Escrow Items" means those items that are described in Section 3.
(M) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid
by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i)
damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the
Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the
value and/or condition of the Property.
(N) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on,
the Loan.
(O) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the
Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(P) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(Q) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

### TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, with power of sale, the following described property located in the

County                        of                   Norfolk                    :
[Type of Recording Jurisdiction]              [Name of Recording Jurisdiction]

See Attached Legal Description

Parcel ID Number:▓▓▓▓▓▓▓▓▓▓▓▓          which currently has the address of
                                                                      [Street]
23 Little Tree Lane
Bellingham                              [City] , Massachusetts 02019      [Zip Code]
("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

MASSACHUSETTS - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS          Form 3022 1/01
VMP ®                                                                          Page 3 of 15
Wolters Kluwer Financial Services

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

MASSACHUSETTS - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS    Form 3022 1/01
VMP ®    Page 4 of 16
Wolters Kluwer Financial Services

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

MASSACHUSETTS - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
VMP ®
Wolters Kluwer Financial Services

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. Occupancy. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. Preservation, Maintenance and Protection of the Property; Inspections. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

VMP ®
Wolters Kluwer Financial Services

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage

MASSACHUSETTS - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
VMP ®
Wolters Kluwer Financial Services
Form 3022 1/01
VMP6A(MA) (0806)
Page 8 of 16

Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13. Joint and Several Liability; Co-signers; Successors and Assigns Bound. Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the

terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14. Loan Charges. Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. Notices. All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

16. Governing Law; Severability; Rules of Construction. This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable

MASSACHUSETTS - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS    Form 3022 1/01
VMP ®    VMP6A(MA) (0806)
Wolters Kluwer Financial Services    Page 11 of 16

me

Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be

VMP ®
Wolters Kluwer Financial Services

VMPGA-MA(0500)
Page 12 of 16

one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. **Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

MASSACHUSETTS - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
VMP ®
Wolters Kluwer Financial Services

Form 3022 1/01
VMP6A(MA) (0806)
Page 13 of 16

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the STATUTORY POWER OF SALE and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the STATUTORY POWER OF SALE, Lender shall mail a copy of a notice of sale to Borrower, and to other persons prescribed by Applicable Law, in the manner provided by Applicable Law. Lender shall publish the notice of sale, and the Property shall be sold in the manner prescribed by Applicable Law. Lender or its designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. Release. Upon payment of all sums secured by this Security Instrument, Lender shall discharge this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. Waivers. Borrower waives all rights of homestead exemption in the Property and relinquishes all rights of curtesy and dower in the Property.

VMP ®
Wolters Kluwer Financial Services

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____ (Seal)
Brian Forit                              -Borrower

_____ (Seal)
Tracy Zacharie                           -Borrower

_____ (Seal)        _____ (Seal)
                -Borrower                             -Borrower

_____ (Seal)        _____ (Seal)
                -Borrower                             -Borrower

_____ (Seal)        _____ (Seal)
                -Borrower                             -Borrower

VMP ®
Wolters Kluwer Financial Services

COMMONWEALTH OF MASSACHUSETTS, Norfolk                    County ss:

On this 3rd      day of March, 2011              , before me, the undersigned notary public,
personally appeared Brian Forit and Tracy Zacharie

proved to me through satisfactory evidence of identification, which was/were    2 MA-Licenses
to be the person(s) whose name(s) is/are signed on the preceding document, and acknowledged to me that
he/she/they signed it voluntarily for its stated purpose.
My Commission Expires:
(Seal)

9/28/2012

Notary Public

MA-01234567-19 — 01/01/1100 (100/0100/0100 xu-01/0100-00-00-01/0000-0000)
VMP ®
Wolters Kluwer Financial Services                                                 bx181                MH&A(MA) (0508)
                                                                                                        Page 16 of 16

Exhibit "A"

That certain parcel of land situated in Bellingham in the County of Norfolk and the Commonwealth of Massachusetts, described as follows:

Said parcel is shown as lot numbered 19 (excepting fee in Little Tree Lane) on a plan drawn by Bowie Engineering Co., Surveyors, dated July 13, 1961, January 5, 1961, and October 13, 1964, as modified and approved by the Land Court, filed in the Land Registration Office as No. 31458A, a copy of a portion of which is filed in Norfolk Registry District with Certificate No. 77116, Sheet 7, Book 386.

There is appurtenant to the above described Sand the right to use Little Tree Lane, as set forth in Document No. 302294.

The above described land is subject to the Protective Covenants set forth in an instrument between Ferigno and Walker Builders, Inc. and The Benland Corporation, dated February 21, 1964, duly recorded in Book 4143, Page 21.

The above described land is subject also to the easement set forth in a grant from The Benland Corporation to Massachusetts Electric Company and the New England Telephone and Telegraph Company, dated May 12, 1964, duly recorded in Book 4169, Page 37.

Being the same premises conveyed in Book as Land Court Doc. No. 1149187.

Subject to any conditions, covenants, easements & restrictions of record insofar as the same are in force and applicable.

Parcel Number ▓▓▓▓▓▓▓▓

PROPERTY ADDRESS:
23 LITTLE TREE LANE
BELLINGHAM, MA  02019

(11-0072-02-MA.PFD/11-0072-02-MA/22)

**EXHIBIT C**

*WHEN RECORDED MAIL TO:*
Santander Bank, N. A.
**601 Penn Street**
**Mail Code 10-6438-FB7**
**Reading, PA 19601**

Doc#1,330r584  06-12-2015  12:20
Norfolk County Land Court

▇▇▇▇ = Redacted Information

**MIN#** ▇▇▇▇▇▇▇▇▇▇
**SIS #** 888-679-6377

## ASSIGNMENT OF MORTGAGE/DEED OF TRUST

FOR VALUE RECEIVED, the Mortgage Electronic Registration Systems, Inc. (MERS), as nominee for Santander Bank, N.A., formerly known as Sovereign Bank, its successors and assigns ("Assignor"), whose address is P.O. Box 2026, Flint, Michigan 48501-2026, hereby assign and transfer unto to Santander Bank, N.A., whose primary place of business is at 824 N. Market Street, Suite 100, Wilmington, DE 19801, its successors and assigns ("Assignee") all of its right, title and interest in and to a certain Mortgage or Deed of Trust dated 03/03/2011 and recorded in the office of the Recorder of Deed in the State of Massachusetts, County of **Norfolk**, more particularly described as follows:

Mortgage Recorded: 03/08/2011
Original Mortgage Company: Sovereign Bank
Original Mortgagors: Brian Pork and Tracy Zacharie
Original Loan Amount: $264,000.00
Document Number: ▇▇▇▇▇▇▇▇
Property Address: 23 Little Tree Lane, Bellingham, MA 02019

[The transfer of the mortgage and accompanying rights was effective at the time the loan was sold and consideration passed to the Assignee. This assignment is solely intended to describe the instrument sold in a manner sufficient to put third parties on public notice of what has been sold.]

TO HAVE AND TO HOLD the same unto the said Assignee, its successor and assigns, forever subject only to all the provisions contained in the said Mortgage. And the said Assignor hereby constitutes and appoints the Assignee as the Assignor's true and lawful attorney, irrevocable in law or in equity, in the Assignor's name, place and stead but at the Assignee's cost and expense to have, use and take all lawful ways and means for the recovery of all the said money and interest, and in case of payment, to discharge the same as fully as the Assignor might or could do if these presents were not made.]

*I AGREE TO THE TERMS OF THIS ASSIGNMENT.*

*Witnessed or Attested by:*

Date: May 29, 2015
Mortgage Electronic Registration Systems, Inc.
(MERS), as nominee for Santander Bank, N.A.,
**formerly known as Sovereign Bank, its successors and assigns**

By: *[signature]*
Richelle Thornton, Assistant Secretary

**ADRIENNE PIZZUTO**

*NOTARY ACKNOWLEDGMENT*

*CAPACITY CLAIMED BY SIGNER:* Designated Signing Officer *OF MERS*

*STATE OF Pennsylvania*
*COUNTY OF Berks*

On 05/29/2015, before me, Shannon Townsend, a Notary Public, personally appeared Richelle Thornton, Assistant Secretary, who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged that he/she executed the same in his/her authorized capacity and that by his/her signature on the instrument, the entity upon behalf of which the person acted executed the instrument.

*WITNESS my hand and official seal.*

*[signature]* Shannon Townsend

*Notary Public*
[illegible] FCL MERS Blank Rev. 1/13/14

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
Shannon Townsend, Notary Public
City of Reading, Berks County
My Commission Expires June 29, 2018
▇▇▇▇ PENNSYLVANIA ASSOCIATION OF NOTARIES

**EXHIBIT D**

 **Office of the Comptroller of the Currency**

Northeastern District
340 Madison Ave., Fifth Floor
New York, NY 10173

October 1, 2013

Mr. Gerard A. Chamberlain
Senior Vice President and Counsel
Sovereign Bank, National Association
75 State Street
Boston, MA 02109

Re:   Change in Corporate Title
       Sovereign Bank, National Association, Wilmington, Delaware
       Control No.: 2013-NE-TitleChange-135741          Charter No.: 25022

Dear Mr. Chamberlain:

The Office of the Comptroller of the Currency ("OCC") has received your letter dated
September 27, 2013, concerning the change in corporate title and amendment to Article First of
the above-referenced bank's Articles of Association. The OCC will amend its records to reflect
that effective October 17, 2013, the corporate title of Sovereign Bank, National Association will
change to "Santander Bank, National Association."

If you have any questions concerning this matter, please contact Meisha M. Bootman,
Licensing Specialist, at (212) 790-4055 or by e-mail at meisha.bootman@occ.treas.gov.

Sincerely,

Steven Maggio
Director for District Licensing

cc: Vance S. Price, OCC/Large Banks

InstitutionHistory                                                                Page 1 of 1



| NIC Home | Institution Search | USBA Search | HCs > $10B |
|---|---|---|---|
| BHCPR Peer Reports | Other Reports | FAQ | |

**Institution History for**  SANTANDER BANK, NATIONAL ASSOCIATION (722777)

10 Institution history record(s) found.                        < Previous  Page [1 ∨] Next >

| Event Date | Historical Event |
|---|---|
| 1902-01-01 | WYOMISSING NEW HOME FEDERAL SAVINGS & LOAN ASSOCIATION located at 840 PENN AVENUE, WYOMISSING, PA was established as a Savings & Loan Association. |
| 1980-11-03 | WYOMISSING NEW HOME FEDERAL SAVINGS & LOAN ASSOCIATION was **renamed** to NEW HOME FEDERAL SAVINGS & LOAN ASSOCIATION. |
| 1984-01-01 | NEW HOME FEDERAL SAVINGS & LOAN ASSOCIATION was **renamed** to PENN SAVINGS BANK, FSB and **changed** from Savings & Loan Association to Federal Savings Bank. |
| 1986-12-01 | PENN SAVINGS BANK, FSB **moved** to 840 PENN AVE WYOMISSING, PA. |
| 1988-01-02 | PENN SAVINGS BANK, FSB **moved** to 1130 BERKSHIRE BLVD WYOMISSING, PA. |
| 1991-12-31 | PENN SAVINGS BANK, FSB was **renamed** to SOVEREIGN BANK,FSB. |
| 1996-12-23 | SOVEREIGN BANK,FSB was **renamed** to SOVEREIGN BANK. |
| 2011-06-20 | SOVEREIGN BANK **moved** to 824 NORTH MARKET STREET, SUITE 100 WILMINGTON, DE. |
| 2012-01-26 | SOVEREIGN BANK was **renamed** to SOVEREIGN BANK, NATIONAL ASSOCIATION and **changed** from Federal Savings Bank to National Bank. |
| 2013-10-17 | SOVEREIGN BANK, NATIONAL ASSOCIATION was **renamed** to SANTANDER BANK, NATIONAL ASSOCIATION. |

Page 1 of 1

NIC Home | FAQ | Help | Contact Us

**EXHIBIT E**

Doc:1,348,343 03-01-2016  3:32
Norfolk County Land Court

N O T
A N
O F F I C I A L
C O P Y

N O T
A N
O F F I C I A L
C O P Y

▓▓▓▓ = Redacted Information

WHEN RECORDED RETURN TO:
OLD REPUBLIC TITLE
ATTN: POST CLOSING
530 SOUTH MAIN STREET
SUITE 1031
AKRON, OH 44311

Santander Bank, N.A. Loan #: ▓▓▓▓▓▓
Freddie Mac Loan #: ▓▓▓▓▓▓

Documents prepared by: MADELINE PEREZ
On (Date): 01/15/2016
Parcel ID#: ▓▓▓▓▓▓
▓▓▓▓▓▓

After recording return to:
Santander Bank, N.A.
Mail Code 10-6438-WO7
601 Penn St. Reading, PA 19601

THIS MODIFICATION IS TO BE EXECUTED IN DUPLICATE ORIGINALS.
ONE ORIGINAL IS TO BE AFFIXED TO THE ORIGINAL NOTE AND
ONE ORIGINAL IS TO BE RECORDED IN THE LAND RECORDS WHERE
THE SECURITY INSTRUMENT IS RECORDED.

This Loan Modification Agreement ("Modification") is effective 01/01/16, between BRIAN FORIT, and
TRACY ZACHARIE ("Borrower"), and Santander Bank, N.A., formerly known as Sovereign
Bank, N.A., formerly known as Sovereign Bank ("Lender") with respect to the Note and
Mortgage or Security Instrument defined and modified in this Agreement and amends and supplements
(1) the Note (the "Note") made by the Borrower, in the original principal sum of U.S. $264,000.00, and
(2) the Mortgage, Deed of Trust or Deed to Secure (the "Security Instrument"), as identified as
Mortgage Electronic Registration System Inc., P.O. Box 2026, Flint, Michigan 48501-2026 as
nominee for Sovereign Bank dated 03/03/11 and recorded on 03/08/11 in Document #1222017-1
in Norfolk County, Massachusetts. The Mortgage and Note have been assigned as follows: by
Assignment of Mortgage executed on 05/29/15, from Mortgage Electronic Registration System
Inc., as nominee for Santander Bank N.A. formerly known as Sovereign Bank to Santander Bank
N.A. The Assignment of Mortgage was recorded on 06/12/15 in Document #1330584 in Norfolk
County, Massachusetts. The Security Instrument, which was entered into as security for the
performance of the Note, encumbers the real and personal property describe in the Security Instrument
(and defined in the Security Instrument as the "Property"), which is located: 23 LITTLE TREE LANE,
BELLINGHAM, MA 02019. That real property is described as:

See description attached hereto and made a part hereof:

The Borrower has requested that the Lender modify the terms of the Note and Security Instrument. The
Lender has agreed to do so pursuant to the terms and conditions stated in this Modification. In
consideration of the agreements made in this Modification, and other good and valuable consideration
and Security Instrument as follows: The Borrower and the Lender agree that the provisions of this

7-468 FHLMC MASTER 2 Borrower Rev. 07-14-15
Loan #: ▓▓▓▓▓▓

Modification supersede and replace any inconsistent provisions set forth in the Note and Security Instrument.

1. The Borrower represents that the Borrower **X** is, _____ is not, the occupant of the Property.

2. The Borrower acknowledges that interest has accrued but not been paid and the Lender has incurred, paid or otherwise advanced taxes, insurance premiums and other expenses necessary to protect or enforce its interest in the Note and the Security Instrument, and that such interest, costs and expenses, in the total amount of $6,809.99 have been added to the indebtedness under the terms of the Note and Security Instrument. As of 01/01/16 the amount, including such amounts which have been added to the indebtedness (if any), payable under the Note and Security Instrument (the "Unpaid Principal Balance") is U.S. $250,347.20.

3. The Borrower promises to pay the Unpaid Principal Balance, plus interest, to the order of the Lender, until the unpaid Principal Balance has been paid. Interest will be charged on the Unpaid Principal Balance at the yearly rate of 4.00% (fixed rate), beginning 01/01/16. The Borrower promises to make monthly payments of principal and interest of U.S. $1,046.30, beginning on 02/01/16, and continuing thereafter on the same day of each succeeding month. If on 1/1/2056 (the "Modified Maturity Date"), the Borrower still owes amounts under the Note and the Security Instrument, as amended by this Modification, the Borrower will pay these amounts in full on the modified Maturity Date. The Borrower will make such payments to Santander Bank, N.A., PO Box 12649, Reading, PA 19612 or at such other place as the Lender may require.

4. Except to the extent that they are modified by this Modification, the Borrower will comply with all of the covenants, agreements, and requirements of the Note and the Security Instrument, including without limitation, the Borrower's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that the Borrower is obligated to make under the Security Instrument.

5. Nothing in this Modification shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument will remain unchanged and in full effect, and the Borrower and Lender will be bound by, and comply with, all of the terms and provisions thereof, as amended by this Modification.

6. If one or more riders are executed by the Borrower and recorded together with this Modification, the covenants and agreements of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Modification as if the rider(s) were a part of this Modification.

[Check applicable box(es)]

☐ 1-4 Family Rider - Assignment of Rents

☐ Modification due on transfer rider

[To be signed by all Borrowers, endorsers, guarantors, sureties, and other parties signing the Note or Security Instrument].

7-468 FHLMC MASTER 2 Borrower Rev. 07-14-15
Loan #: ▓▓▓▓▓▓

IN WITNESS WHEREOF, Borrower and Lender have executed this Agreement.

```
              A N                    A N
     O F F I C I A L        O F F I C I A L
         C O P Y                C O P Y
```

SANTANDER BANK, N.A., formerly known as Sovereign Bank, N.A., formerly known as Sovereign Bank with respect to the Note and Mortgage or Security Instrument defined and modified in this Agreement

Name: Angela Delp
Title: AVP

COMMONWEALTH OF PENNSYLVANIA, BERKS COUNTY SS:

On this, the 3rd day of , 2016, before me, the undersigned, a Notary Public, personally appeared Angela Delp AVP , personally known to me or proved to me on the basis of satisfactory evidence to be such officer of Santander Bank, N.A., a corporation, and that he as such officer, being authorized to do so, executed the foregoing instrument for the purposes therein contained by signing the name of the Corporation by themselves as such officer, and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

```
COMMONWEALTH OF PENNSYLVANIA
        Notarial Seal
Danielle Ninfo, Notary Public
 City of Reading, Berks County
My Commission Expires Aug. 8, 2017
MEMBER, PENNSYLVANIA ASSOCIATION OF NOTARIES
```

NOTARY PUBLIC
Danielle Ninfo

[BORROWER SIGNATURE ON NEXT PAGE]

7-468 FHLMC MASTER 2 Borrower Rev. 07-14-15
Loan #:

[BORROWER SIGNATURE PAGE]

BRIAN FORIT, Borrower

TRACY ZACHARIE, Borrower

STATE OF _Massachusetts_
COUNTY OF _Norfolk_

On this, the $8$ (day) of _Jan_ (month), 201$6$ , before me, the undersigned, a Notary Public, in and for said state, personally appeared BRIAN FORIT and TRACY ZACHARIE, Borrowers, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

Notary Public

Brenda A. Bianchi

**BRENDA A. BIANCHI**
Notary Public, Commonwealth of Massachusetts
My Commission Expires Jan. 28, 2016

Original

7-468 FHLMC MASTER 2 Borrower Rev. 07-14-15
Loan #:

Exhibit "A"                 N O T                     N O T
                         A N                     A N
That certain parcel of land situated in Bellingham in the County of Norfolk and the Commonwealth of
Massachusetts, described as follows:            O F F I C I A L
                         C O P Y                     C O P Y

Said parcel is shown as lot numbered 19 (excepting fee in Little Tree Lane) on a plan drawn by Bowie
Engineering Co., Surveyors, dated July 13, 1961, January 5, 1961, and October 13, 1964, as modified and
approved by the Land Court, filed in the Land Registration Office as No. 31458A, a copy of a portion of which is
filed in Norfolk Registry District with Certificate No. 77116, Sheet 7, Book 386.

There is appurtenant to the above described land the right to use Little Tree Lane, as set forth in Document No.
302294.

The above described land is subject to the Protective Covenants set forth in an instrument between Ferigno and
Walker Builders, Inc. and The Benland Corporation, dated February 21, 1964, duly recorded in Book 4143,
Page 21.

The above described land is subject also to the easement set forth in a grant from The Benland Corporation to,
Massachusetts Electric Company and the New England Telephone and Telegraph Company, dated May 12,
1964, duly recorded in Book 4169, Page 37.

Being the same premises conveyed in Book as Land Court Doc. No. 1140187.

Subject to any conditions, covenants, easements & restrictions of record insofar as the same are in force and
applicable.


Parcel Number

**PROPERTY ADDRESS:**
**23 LITTLE TREE LANE**
**BELLINGHAM, MA  02019**




(11-0072-02-MA.PFD/11-0072-02-MA/22)



Chain I